```
               IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF OHIO
                          EASTERN DIVISION
```

Inter-National Foundation
Corporation,

       Plaintiff,

    v.                             Case No. 2:09-cv-983

Disney 1999 Limited
Partnership, et al.,

       Defendants.

OPINION AND ORDER

This is an action brought by plaintiff Inter-National Foundation Corporation ("INFC"), an Ohio not-for-profit corporation with its principal place of business in Columbus, Ohio, against defendants Disney 1999 Limited Partnership ("Disney L.P.") and Bingham 1999 Limited Partnership ("Bingham L.P.")(collectively "the defendants"), which are limited partnerships located in and organized under the laws of Texas. The action was originally filed in the Court of Common Pleas of Franklin County, Ohio on September 24, 2009. On October 30, 2009, defendants filed a notice of removal of the action to this court, basing jurisdiction on the diversity of citizenship of the parties. This matter is before the court on defendants' December 28, 2009, motion to transfer venue to the United States District Court for the Eastern District of Missouri in St. Louis, Missouri, pursuant to 28 U.S.C. §1404(a). INFC opposes the motion.

I. INFC's Complaint

In the complaint, INFC alleges that it was a limited partner of Disney L.P. and Bingham L.P., and that it held a ninety-eight percent interest in these limited partnerships. On June 27, 2002,

INFC borrowed $50,000 from each of the defendants, as evidenced by promissory notes executed on that date in Columbus, Ohio. See Complaint, Exs. A (note to Bingham L.P.) and F (note to Disney L.P.). INFC and the defendants also executed separate security agreements on June 27, 2002. See Complaint, Ex. B (security agreement for Bingham L.P. note) and Ex. G (security agreement for Disney L.P. note). In these agreements, INFC pledged its limited partnership interests in the defendant limited partnerships as collateral for the notes.

By letter dated October 2, 2008, INFC was notified that the notes were in default, and that immediate payment was due in the principal amount of $50,000, plus interest in the amount of $40,883.51. Complaint, Exs. D and I. By separate letters dated October 2, 2008, INFC was informed that pursuant to the security agreements, the defendants intended to sell the collateral covered by the agreements (INFC's limited partnership interests) at a public auction at the office of Vince D. Vogler in St. Louis, Missouri, on October 20, 2008. Complaint, Ex. E; Defendants' Reply, Ex. 1, p. 31. INFC filed a petition in the Circuit Court of St. Louis County, Missouri, seeking to enjoin the sale. Defendants' Reply, Ex. 1. INFC's motion for a temporary restraining order and injunctive relief was denied by the Missouri court on October 20, 2008. Defendants' Reply, Ex. 4.

INFC alleges that according to tax documents filed with the partnership tax returns, the fair market value of INFC's interest in the Bingham L.P. as of December 31, 2007, was at least $15,494,115, and the fair market value of INFC's interest in the Disney L.P. as of that date was at least $27,180,436.00. Complaint, Paras. 15-19, 25-39. INFC alleges that it objected to

2

the sale of its partnership interests because the indebtedness evidenced by the promissory notes was not due and owing, but that defendants refused to cancel the sale. Complaint, Paras. 21-22, 41-42. INFC further alleges that the auction was not advertised or published as required by the Uniform Commercial Code ("UCC") and that the sale was attended solely by INFC's counsel and Mr. Vogler. Complaint, Paras. 24-26, 44-46. INFC alleges that its partnership interest in the Bingham L.P. was purchased by Mr. Bingham for $1,500, and that its partnership interest in Disney L.P. was purchased by Mr. Disney for $1,500. Complaint, Paras. 27, 47.

In Counts I and II of the complaint, breach of contract, INFC alleges that it was not in default of the security agreements, and that the defendants breached the terms of the security agreements. In Counts III and IV, INFC alleges that the sale of its partnership interests did not comply with Article 9 of the UCC. Counts V and VI assert claims for wrongful sale and conversion of INFC's limited partnership interests, and Counts VII and VIII assert claims of unjust enrichment.

II. Standards for Change of Venue

Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. §1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)(quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)); see also Phelps v. McClellan, 30 F.3d 658, 663 (6th Cir. 1994)(under §1404(a), a district court

3

has broad discretion to grant or deny a motion to transfer a case). The moving party bears the burden of demonstrating that a change of venue is warranted. Centerville ALF, Inc. v. Balanced Care Corp., 197 F.Supp.2d 1039, 1049 (S.D.Ohio 2002).

> In ruling on a motion to transfer, this court should consider the private interest of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of interests of justice.

Moses v. Business Card Express, Inc., 929 F.2d 1131, 1137 (6th Cir. 1991). A motion to transfer venue cannot be used simply to shift the inconvenience of litigation from the defendant to the plaintiff. Copeland Corp. v. Choice Fabricators, Inc., 492 F.Supp.2d 783, 789 (S.D.Ohio 2005).

> Factors to be considered in deciding the motion include:
>
> (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

Perceptron, Inc. v. Silicon Video, Inc., 423 F.Supp.2d 722, 729 (E.D.Mich. 2006). The convenience of witnesses is a primary factor. Midwest Motor Supply Co. v. Kimball, 761 F.Supp. 1316, 1319 (S.D.Ohio 1991). Other case-specific factors may include the nature of the suit, the nature and materiality of the testimony to be elicited from witnesses, the location of willing and unwilling witnesses, the residences of the parties, and the condition of the dockets of the respective courts. Centerville ALF, 197 F.Supp.2d

at 1049; Mead Data Central, Inc. v. West Publishing Co., 679 F.Supp. 1455, 1457 (S.D.Ohio 1978). The presence of a choice-of-law provision is relevant to venue, but not dispositive. Kimball, 761 F.Supp. at 1318.

Although the plaintiff's choice of forum is given weight when deciding whether to grant a motion to change venue, this factor is not dispositive. Lewis v. ACB Business Servs., Inc., 135 F.3d 389, 413 (6th Cir. 1998). The Supreme Court has stated that "there is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981); see also Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)("[U]nless the balance is strongly in favor of the defendant the plaintiff's choice of forum should rarely be disturbed."). However, this factor is entitled to less weight when virtually all of the events underlying the action occurred in the location other than the forum selected by the plaintiff. Neff Athletic Lettering Co. v. Walters, 524 F.Supp. 268, 272-73 (S.D.Ohio 1981).

III. Motion to Transfer

A. Existence of Venue in Transferee District

The first step in addressing defendants' motion to transfer venue is to determine whether the Eastern District of Missouri is a district where the action "might have been brought." §1404(a). Where jurisdiction is founded on diversity of citizenship, a civil action may be brought in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same state; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a

> substantial part of property that is the subject of the action is situated; or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, of there is no district in which the action may otherwise be brought.

28 U.S.C. §1391(a). In this case, INFC alleges in the complaint that the alleged improper sale of its partnership interests, the collateral covered by the security agreements, occurred in St. Louis, Missouri. Thus, a substantial part of the events or omissions giving rise to INFC's claims occurred in the Eastern District of Missouri, satisfying §1391(a)(2).

B. Choice of Forum/Law and Familiarity with Governing Law

INFC chose to file this action in Ohio. The security agreements have no choice of forum provision. Defendants attempt to bootstrap the choice of forum provision contained in the promissory notes into the security agreements. In the promissory notes, the parties agreed that "any and all legal actions or proceedings against any party which arise under this Note shall be commenced within the County of St. Louis, State of Missouri, in a court of competent jurisdiction." See Complaint, Exs. A and F, §6.1. Defendants note that the security agreements are "[s]ubject to" the promissory notes. See Complaint, Ex. B, p. 1 (security agreement for Bingham L.P. note) and Ex. G, p. 1 (security agreement for Disney L.P. note). However, INFC's claims do not "arise under" the promissory notes, but rather under the security agreements. There is no language in the security agreements which specifically incorporates by reference the choice of forum clause in the notes. The fact that the parties included a choice of forum clause in the promissory notes but not in the security agreements executed on the same date suggests that the absence of a choice of

6

law provision in the security agreements was deliberate. The choice of forum clause in the notes does not require a transfer of venue in this case, although the fact that INFC was willing to agree to a court in St. Louis, Missouri, as being the appropriate forum for actions arising under the promissory notes, and in fact commenced such an action in the Circuit Court of St. Louis County, weakens INFC's argument that it would be inconvenient to litigate this case in Missouri.

INFC notes that the security agreements in this case contain a choice of law clause which states: "This agreement and all rights and obligations hereunder, including matters of construction, validity, and performance, shall be governed by the laws of Ohio." See Complaint, Ex. B (security agreement for Bingham L.P. note) and Ex. G (security agreement for Disney L.P. note). However, even if the case is transferred to Missouri, the court in Missouri would also apply Ohio law. In the event of a transfer of venue under §1404(a), the transferee court must apply the choice of law rules that prevailed in the transferor court, see Ferens v. John Deere Co., 494 U.S. 516, 523 (1990), which in this case would be Ohio's choice of law rules. The choice of law clause would be enforceable under Ohio law. See Walters, 542 F.Supp. at 273.

Further, the security agreements also provide that "all terms used herein which are defined in the Uniform Commercial Code of Missouri ... have the same meaning herein as in the Code." Exs. B and G, §1(c). The promissory notes contain a clause stating that the notes "shall be governed by and construed in accordance with the laws of the state of Missouri, and all issues of interpretation arising under" the notes "shall be decided in accordance with such law." Exs. A and F, §6.1. Although INFC contends that the notes

7

are irrelevant to the instant case, INFC has alleged in the complaint that the indebtedness evidenced by the promissory notes was not due and owing, but that defendants refused to cancel the sale. Complaint, Paras. 21-22, 41-42. Thus, it is conceivable that there will be a need to refer to and interpret provisions in the promissory notes in this case by applying Missouri law.

Since it is possible that both Ohio and Missouri law will be applied in this case, the fact that one court or the other is more familiar with the law of the state in which it is located does not weigh heavily either in favor of or against a transfer of venue in this case. In addition, INFC's claims are based largely on the UCC, so that there may not be significant differences between the relevant Ohio and Missouri law. INFC has acknowledged that the instant case "is really a straight-forward commercial case" and that "there are no particular issues of law that are peculiar to Missouri, and no special knowledge of Missouri law will be required to adjudicate these claims." INFC's Memorandum in Opposition, pp. 5-6.

C. Location of Events

The record indicates that the promissory notes referred to in the security agreements (and presumably the security agreements as well) were executed on June 27, 2002, in Columbus, Ohio. Since INFC, an Ohio corporation, is located in Columbus, Ohio, it alleges that the loss of its assets was felt there. However, the sale of INFC's partnership interests which is the subject of the instant action occurred in Missouri. This factor weighs more heavily in favor of a transfer.

D. Location and Convenience of the Parties

INFC is headquartered in Columbus, Ohio, whereas the

8

defendants have their principal place of business in Dallas, Texas. INFC notes that St. Louis, Missouri, is 420 miles from Columbus, Ohio, and argues that it would be inconvenient for INFC to bear the cost of pursuing this case in Missouri. Litigating this action in Missouri would be more convenient for the defendants, although this would require both INFC and the defendants to travel, whereas maintaining the action in Ohio would only require defendants to travel. There is no information before the court concerning the relative means of the parties to bear this expense.

E. Convenience of Witnesses and Availability of Process

INFC has identified one witness, John Bowen, INFC's president, who resides in Circleville, Ohio. Mr. Bowen did not sign the security agreements or the promissory notes in question, but as INFC's president, he would presumably be able to testify concerning the defendants' alleged noncompliance with the UCC and any damages sustained by INFC. Defendants have identified three potential witnesses who reside in Missouri. These witnesses include: (1) non-party witness Attorney Vincent Vogler, at whose office the sale of the partnership assets was held; (2) non-party witness Michael Kohn, who allegedly participated in the sales transactions and prepared written instruments relating to those transactions; and (3) non-party witness Gerry Ricken, who allegedly dealt with insurance-related issues concerning the sales transactions. Obviously a Missouri forum would be more convenient for these witnesses.

Service of process would be available for a Missouri forum. However, this court could not compel the attendance of the three Missouri witnesses at a trial in Ohio. See Fed.R.Civ.P. 45(c)(3)(A)(ii) (requiring the issuing court, on timely motion, to

9

quash a subpoena that requires a person who is a non-party or not a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person unless the person resides, is employed, or regularly transacts business in person within the state where the trial is held, in which case quashing the subpoena is discretionary under Fed.R.Civ.P. 45(c)(3)(A)(iii)). It would be more economical to secure the testimony of these witnesses if the action proceeds in Missouri. These factors weigh in favor of a transfer of the case to Missouri.

## F. Location of Documents

INFC argues that its records are located in this district. Defendants argue that INFC has not shown how its records are relevant to the sale of its partnership interests. Defendants further state that the documents relating to the sale of INFC's partnership interests, which are more material to the claims in the instant action, are located in the offices of Mr. Kohn in Missouri. However, defendants acknowledge that duplicating and transferring these documents to Ohio might not be an extraordinary burden. See Defendants' Reply, p. 6. There is no information before the court indicating that the relevant records are voluminous in nature. Thus, this factor weighs only slightly in favor of a transfer of venue.

## G. Trial Efficiency

Finally, considering the issue of docket congestion, the court has determined that as of September 30, 2009, the Eastern District of Missouri had 2,248 civil cases pending, while the Southern District of Ohio had 2,809 civil cases pending. See Administrative Office of the United States Courts, 2009 Annual Report of the

10

Director on the Judicial Business of the United States Courts, Table C-3A, p. 155. The Eastern District of Missouri currently has ten active and senior judges, resulting in an average caseload of approximately 225 cases per judge, whereas the Southern District of Ohio currently has fourteen active and senior judges, resulting in an average caseload of approximately 200 cases per judge. This difference is not significant, and therefore this factor is neutral.

IV. Conclusion

    Having considered and weighed the above factors, the court concludes that the circumstances in favor of transferring this action to Missouri outweigh INFC's interests in maintaining this action in its chosen forum. The convenience of witnesses and the ability to secure their appearance at trial are primary considerations in this case. Most of the events underlying INFC's claims occurred in Missouri, and the records of the allegedly invalid sale are located there. Defendants' motion for transfer of venue pursuant to §1404(a) (Doc. No. 10) is granted, and this action is hereby transferred to the United States District Court for the Eastern District of Missouri at St. Louis, Missouri.

Date: April 9, 2010                s/James L. Graham
                                          James L. Graham
                                          United States District Judge